**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES KLEIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No: 1:16-cv-08035** |
| **vs.** | ) | |
| | ) | **The Honorable Maria Valdez** |
| **NEWLY WEDS FOODS, INC.,** | ) | **Presiding Magistrate Judge** |
| | ) | |
| **Defendants.** | ) | |

---

| | |
|---|---|
| **NEWLY WEDS FOODS, INC.,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **JAMES KLEIN,** | ) |
| | ) |
| **Plaintiff/Counter-Defendant.** | ) |

# PLAINTIFF'S MOTION TO COMPEL

Now comes the Plaintiff, James Klein, by and through his attorneys, DeBofsky, Sherman & Casciari P.C. and The Law Offices of Ruth I. Major, P.C., and for his Motion to Compel, states as follows:

## COMPLIANCE WITH LOCAL RULE 37.2

Plaintiff contacted Defendant about issues with document production pursuant to the first round of written discovery requests that would need to be discussed via a meet and confer call and such a call was held on March 5, 2018. Plaintiff sent a letter to Defendant to summarize that call on March 6, 2018, in which Plaintiff requested responses to outstanding discovery issues discussed within a week after the call. In the interim, Defendant's responses to Plaintiff's Second Set of Document Requests were provided on March 8, 2018. Issues related to these responses began to be addressed in April 2018, because the scheduling and taking of depositions occurred during mid-

to late March and early April. Still, the parties exchanged follow-up emails on March 12 and March 13. Some issues were resolved, but many of the issues discussed on the March 5 call and in the March 6 letter, while other issues required further discussion.

The next meet and confer call was held on April 10, after the scheduled depositions had been taken, during which the outstanding items from the March call were addressed, as well as issues related to Defendant's responses to Plaintiff's Second Set of Document Requests, mentioned *supra*, and Defendant's responses to Plaintiff's Second Set of Interrogatories and Third Set of Document Requests, which were provided to Plaintiff on April 6, after being issued to Defendant on March 7. After that meet and confer call, the parties exchanged follow-up emails, in further attempts to resolve outstanding issues and to limit the extent to which this Court would need to address discovery issues, on April 11, 12, 16, 19, and 26, May 3. As recently as May 16, the parties exchanged emails about outstanding discovery issues, and held a meet and confer call both about the outstanding issues, and to discuss Plaintiff's intent to file this Motion to Compel. As some issues remain unresolved, this motion followed.

## RELEVANT FACTS

Mr. Klein was a dedicated employee of Newly Weds Foods, Inc. ("Newly Weds") for nearly 18 years, and during that time he always received excellent written performance reviews, when formal reviews were given. Informally, during Mr. Klein's tenure at Newly Weds, the company practice was to provide a 3% merit increase of an employee's salary in any year when the employee met or exceeded expectations, and Mr. Klein received that increase nearly every year, including in the years immediately preceding his termination. His salary was even increased during the summer of 2015, just months before Newly Weds was to violate the Age Discrimination in Employment Act ("ADEA") when choosing to terminate his employment, on the basis of his

age, to play a game of musical chairs with job responsibilities in a way that protected the employment of the younger, less qualified personnel at the expense of Mr. Klein, who was in his 60s at the time of his termination.

Earlier in 2015, part of Mr. Klein's job as the Director of Product Development, Seasonings within the Research and Development Division ("R&D") of Newly Weds, had been split off into another role, and handed to Kendle Gorski, an employee who was under the age of 40 and had only worked for the company for half as long as the typical manager since graduating college when she was promoted to a managerial role to handle part of Mr. Klein's role. At the time, the reduction was justified as Newly Weds' efforts to reduce Mr. Klein's responsibilities to make room for new job responsibilities he was promised as part of a supposed reorganization being orchestrated by Dirk Beekman, Vice President of R&D.

In August 2015, the company staged what it called a "reorganization" involving Mr. Klein, which they represented to the U.S. Equal Employment Opportunity Commission included his direct reports losing their positions too. In fact, all they did was terminate Mr. Klein's employment and replace him with a significantly younger and less qualified person, George Kelecich. Kelecich had lost his prior responsibilities when they were given to an employee who was significantly younger than Kelecich (Craig Lawson), so he also was treated less favorably than an employee significantly younger than him, but treated more favorably than the significantly older Mr. Klein. Newly Weds also added a new employee, Carol Bagley, to his team, who was also significantly younger than Mr. Klein, but that person simply filled an open spot that Mr. Klein had been trying to fill for months. In other words, once Mr. Klein was replaced by the much younger Kelecich, the company also treated Mr. Kelecich more favorably by giving him the added support it had denied to Klein for months. After Mr. Klein was replaced by Kelecich, Klein's prior direct reports

continued to perform the same job functions they had performed under Klein, only now they performed those functions under Kelecich.

Mr. Klein was aware that Newly Weds would use "reorganization" or "job elimination" as an excuse for terminating people who were in a protected class. Several years earlier the only openly gay scientist was terminated pursuant to a purported reorganization that apparently impacted no other employees. In another example, when Mr. Klein's subordinate was moved off his team several months prior to Klein's termination, he was told that they had to keep the position open for several months before hiring a replacement to create the appearance that the position had been eliminated. In yet another example, just a few months before Mr. Klein was terminated, a woman who was on FMLA leave was terminated pursuant to a "reorganization." She had five direct reports. Emails show that the company acknowledged it did not have a sufficient basis to terminate her for cause so Newly Weds called the termination the "elimination" of a position. In the weeks leading up to her termination, she was asked to show a colleague how her area operated. When she was terminated, he stepped into her role and supervised the very same people she had been supervising at the time of her termination. Newly Weds has used the "reorganization" story to justify the termination of Mr. Klein, including making assertions about the scope of the reorganization to the EEOC. In discovery, however, many of the assertions Newly Weds made to the EEOC have been proven false or Mr. Klein has not been able to fully explore the assertions because of Newly Weds' refusal to produce responsive documents.

## THE STANDARD FOR COMPELLING DISCOVERY

Federal Rule of Civil Procedure 26 states,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence [at the trial] to be discoverable." *See id.*

**DISCOVERY SOUGHT**

**A. Redacted Documents**

Defendant produced documents from three meetings that occurred in the months leading up to the termination of Mr. Klein's employment. Each document is identified in the heading as a monthly "Management Meeting." Other than a few headings and sub-headings, all of the information in the documents is redacted. (See Group Exhibit A, NWF 000556 through 000559, a redacted copy of which is attached hereto, and which is the subject of a Motion for Leave to File Under Seal, filed pursuant to the June 19, 2017 Agreed Confidentiality Order (Docket No. 33), as well as Local Rules and this Court's Standing Orders, due to Defendant's designation of these documents as "Confidential"). Defendant failed to produce a privilege log on which these documents were listed as being redacted due to a claim of privilege and as such, Defendant should be ordered to produce the documents without redaction. Indeed, during the meet and confer process, Defendant claimed the Monthly Management meeting notes were redacted because of purported proprietary information of third parties (despite the documents being more than 3 years old) and not because of privilege. Even if that were true, the Protective Order entered in this case (Docket No. 33) would allow the document to be marked as "confidential" and be treated according to the terms of the Order, such that it should be produced without redactions. It could even be produced on an attorney's-eyes-only basis.

**B. Privilege Log**

Additionally, Defendant should produce a privilege log as required by Federal Rule of Civil Procedure 26(b)(5)(A)(i) – (ii), for any documents redacted or withheld on a claim of privilege, which were created before the litigation in this matter began. The log which Defendant should produce must "describe the nature of the documents, communications, or tangible things produced or disclosed – and do so in a manner that. . . will enable other parties to assess the claim." The Seventh Circuit has recognized that "[t]he mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of the essential elements." *U.S. v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (*citing In Re Grand Jury Proceedings (Thullen)*, 220 F.3d 568, 571 (7th Cir. 2000); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). The identity of the author and recipient, and the date of the communication over which the claim is asserted are essential pieces of information for "without the identities and job descriptions of the persons. . . there is no way for an opposing party to assess whether they are within the. . . privilege, as is required by Federal Rule of Civil Procedure 26(b)(5)(A)." *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007). Additionally, identifying documents with such pertinent information still maintains any privilege as is necessary to comport with Rule 26. See Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiff has requested a privilege log repeatedly but to no avail.

**C. Specific Discovery Requests**

**First Set of Interrogatories**

In **Interrogatory 5**, Plaintiff asked for a list of people whose employment was terminated by Defendant as part of the "reorganization" process, but Defendant limited its response to individuals who worked in R&D. This is an improper limitation in light of the representation

Defendant made when Mr. Klein's Charge of Discrimination was before the EEOC. Before that federal agency, Defendant claimed that "Mr. Klein and at least sixty (60) other employees experienced employment or job duty modifications, reporting changes, reassignments, and/or position changes" as part of the "widespread reorganization of three (3) distinct departments." (See Newly Weds' Response to Mr. Klein's EEOC Charge, a copy of which is attached hereto as Exhibit B, at NWF 000373) (emphasis in original). By Defendant's own admission then, individuals outside of R&D are relevant to this matter and Defendant should provide a full list of individuals whose employment was terminated as part of the "reorganization" process. Plaintiff should have the chance to examine this information, due to Defendant's statement to the EEOC. If Defendant's representations to a federal agency, the EEOC, on the exact issue that is before this Court, the termination of Mr. Klein purportedly as part of the reorganization, are false, then evidence of Defendant's untruthful conduct in responding to Mr. Klein's claims, especially to the federal agency charged with investigating the issue, further supports the pretextual nature of Mr. Klein's termination. This should not impose much of a burden on Defendant, since the information should have been gathered by the person who responded to the EEOC Charge of Discrimination when the agency was advised of the number of people affected, across multiple departments, by the "reorganization."

Similarly, in **Interrogatories 6** and **7**, Plaintiff asked for names of all executive and managerial employees terminated from 2008 through 2015 (**Interrogatory 6**), and for names of all people provided with an "Employment Termination Agreement" from 2008 through early May 2017 (**Interrogatory 7**). Here too, Defendant limited its responses inappropriately; this time, geographically limiting the scope to individuals terminated from Defendant's Chicago facilities. Plaintiff agreed to Defendant's proposal to limit the time frame to a three-year period, from 2013

through 2015, but not to Defendant's geographic limitation. As discussed above, Defendant represented to the EEOC that the reorganization affected "at least sixty (60) other employees" as part of the "widespread reorganization of three (3) distinct departments." (Ex. B, NWF 000373). The individuals affected did not all work in Chicago. Even R&D, which is only one of the departments affected by the supposed reorganization, is not confined strictly to Chicago. Employees working in R&D are based out of multiple facilities across the country. Employees in multiple departments who, like Mr. Klein, were supervised by Mr. Beekman, are similarly spread across the country, which means that other individuals who may have been terminated as part of the supposed reorganization could have worked not only in multiple departments but in multiple locations as well. For those reasons, Defendant should not be permitted to confine his responses to **Interrogatories 6** and **7** to identifying *only* the individuals who worked in Chicago when the purported reorganization Defendant relies upon to justify its conduct was carried out in many locations outside Chicago. These requests are reasonably calculated to lead to the discovery of admissible evidence. Defendant should have to identify those individuals terminated (**Interrogatory 6**) and provided with termination agreements (**Interrogatory 7**) for all offices, with the exception that shift workers in the Defendant's facilities need not be identified, as addressed *infra*.

**First Set of Document Requests**

In **Document Request 2**, Plaintiff asked for the production of organizational charts from 2014 to early May 2017, but Defendant limited its response to charts related to employees in Chicago and refused to produce any organization charts, even for Chicago, past July 2015. This is significant because the organization charts will help Mr. Klein test the claim that other employees who were forced out of Newly Weds on the basis of a purported reorganization. For example, if

Newly Weds claims that as part of the reorganization two positions were combined into one, the organization charts from after Mr. Klein's termination will show if that was in fact true because it will show the titles of employees working for the company and the list of their direct reports (and the direct reports' titles). Producing the reports is a simple matter. As addressed with respect to Interrogatories 6 and 7, *supra*, this limitation is inappropriate because the individuals affected by the reorganization did not all work in Chicago, but are based out of multiple facilities across the country. Employees in multiple departments who, like Mr. Klein, were supervised by Mr. Beekman, are similarly spread across the country, which means that other individuals who may have been terminated as part of the supposed reorganization could have worked not only in multiple departments but in multiple locations as well. For those reasons, Defendant should be ordered to produce all organization charts for years 2014 through 2017.

In **Document Request 12**, Plaintiff requested the production of documents about the Defendant's Employee Incentive Plain ("EIP"), but Defendant only provided limited documents, instead of a full explanation of the EIP and documents which would show what Mr. Klein's return on investment would have been up to the present, were it not for the unlawful termination of his employment. The EIP was used by Defendant to pay a portion of the annual compensation to employees as stock in the company. If the company was sold at any point in time, the employees would then receive a portion of the sales proceeds according to the valuation of their shares at the time of sale. Additionally, employees had the option of paying into the EIP a certain amount of their salaries each year. At the end of each year, the employees could typically expect to be paid a percentage of their investments for the year (based upon the most recent 5-year valuation of their investments), as cash payments to reflect the annual return on their investments. When Mr. Klein's employment was terminated, he was paid back the amount he had paid into the EIP, but not the

full amount he would have been due as a return on his investment. The amount he would have been due if not for his termination remains to be calculated, based on documents in Defendant's possession and control. All EIP-related documents described in **Document Request 12** should therefore be produced as they are relevant to calculating Mr. Klein's damages in this matter. Moreover, these documents are maintained by Newly Weds and are easily capable of production since the EIP is used as part of compensation packages at the company.

In **Document Request 16**, Plaintiff asked that a list of search terms be applied to Mr. Beekman's emails and that all "hits" on those terms be produced. Defendant determined that for two of the terms, "James" and "Jim," it would only produce the documents when it was sure they were referencing Plaintiff but would withhold from production emails that may pertain to Mr. Klein where Defendant was uncertain. Defendant agreed to run those search terms across Mr. Beekman's email account and to produce responsive documents. When the documents were hits on those search terms, but were clearly not references to Mr. Klein, Plaintiff agrees with Defendant's decision not to produce documents that referenced a different person than Mr. Klein. However, where it could not be ascertained from the document whether the hit on "James" or "Jim" was a reference to Mr. Klein, those documents should have been produced because Mr. Klein may be able to determine that they do pertain to him, and they may themselves be admissible evidence, or may lead to the discovery of admissible evidence, when examined in relation to other documents produced in this matter which may shed light on whether the documents discuss "Jim" or "James" Klein. Accordingly, all documents that were collected by Defendant in response to the search, other than those Defendant knows do not pertain to Mr. Klein, should be produced.

In **Document Request 17**, Plaintiff asked for documents relating to any person hired or fired by Defendant between January 1, 2015 and December 31, 2015 (the year Mr. Klein was

terminated), but Defendant insisted on producing documents for Chicago employees only. As addressed with respect to Interrogatories 6 and 7, *supra*, Defendant's limitation is inappropriate because the individuals affected by the reorganization did not all work in Chicago, but are based out of multiple facilities across the country. Employees in multiple departments who, like Mr. Klein, were supervised by Mr. Beekman, are similarly spread across the country, which means that other individuals who may have been terminated as part of the supposed reorganization could have worked not only in multiple departments but in multiple locations as well. For those reasons, all documents that are responsive to **Document Request 17** should have been produced, including the separation letters for all the individuals fired by Defendant during that time frame.

In **Document Request 18**, Plaintiff asked for documents about age discrimination complaints against Newly Weds between January 1, 2014 and December 31, 2015, but Defendant improperly limited the scope of this request to documents about complaints made against Defendant's "Chicago operations." As explained, the purported reorganization affected employees outside "Chicago" and information that may lead to admissible evidence could and likely would cover complaints outside just one city. All documents responsive to **Document Request 18** should have been produced, addressed with respect to Interrogatories 6 and 7, *supra*.

**Second Set of Interrogatories**

In **Interrogatory 10**, Plaintiff requested that all individuals whose employment was affected by the reorganization be identified and that the manner in which each individual's employment was affected should be described (e.g., terminated, demoted, lateral transfer, etc.). Defendant responded by listing some individuals, approximately 25 of them, but neglected to identify approximately 35 individuals from the group of "at least sixty (60) other employees" as part of the "widespread reorganization of three (3) distinct departments." (See Ex. B, NWF

000373)., according to the statement filed with the EEOC. For that reason, Defendant should identify the other 35 unnamed individuals. Defendant has claimed, during the meet and confer process, that the individuals "affected" include the people whose reporting structure changed, as seen in organizational charts. However, if that is the case, then Defendant should identify those individuals in a supplemental response to **Interrogatory 10**, and should describe in its supplemental response the manner in which the employment of each of those 35 individuals was affected.

**Third Set of Document Requests**

In **Document Request 1** from the Third Set of Document Requests, Plaintiff requested personnel files for various individuals connected to this case. Though Defendant has produced many of these files, Defendant refuses to produce the personnel files for the following four individuals: Kenneth Bertolini, Steven Beard, Melissa Torres, and Miriam Lopez. All four individuals' names appear on a chart which Defendant produced in this matter, tracking employees who were terminated from the employ of Newly Weds, including Mr. Klein. Ms. Lopez' termination reason was left blank in the chart, but Ms. Lopez was named in Plaintiff's Initial Disclosures as a former Newly Weds employee who was believed to have been forced into retirement on the basis of her age. As a result, the information contained in her personnel file is reasonably calculated to lead to the discovery of admissible evidence, and is discoverable. In the cases of Mr. Bertolini, Mr. Beard, and Ms. Torres, their terminations were all characterized in the exact same way as that of Mr. Klein within the chart, "Layoff/Reduction in Workforce." Based on that characterization, Mr. Klein should be able to examine whether any relevant information might be contained in the personnel files of individuals whose departures from Newly Weds might share common elements with that of Mr. Klein.

In **Document Request 5**, Plaintiff requested the production of all offer letters, job descriptions, and hiring materials for the individuals hired by Newly Weds from June 1, 2015 through June 1, 2016. Defendant objected to producing these documents, citing relevance and proportionality as its concerns, and then noted that Ms. Bagley was the only person who could "possibly" be similarly situated to Mr. Klein. During the meet and confer process, Plaintiff limited this request to exclude shift workers in the company's various factories, to address the proportionality concern. However, Plaintiff believes additional hires may have been made, since this time frame and scope would cover other individuals who, like Ms. Bagley, were hired during the "reorganization" period at Newly Weds. For that reason, as discussed *supra*, Defendant's production of documents for individuals hired during this time frame should not be limited to people working in R&D since the "reorganization" was not so limited. As an example, Plaintiff believes that an individual was hired to work for Ms. Gorski during this time frame, and if so, the responsive documents for that person should be produced, as any documents related to such hires are certainly relevant to the claims and defenses in this matter. It may not lead to admissible evidence, but this is discovery and since the reorganization is the reason Defendant uses to justify the termination of a long-term employee with no performance issues, Plaintiff should have the opportunity to fully explore these issues in discovery.

**D. Emails Which are Missing Attachments**

Several documents included within Defendant's production noted attachments which should have been provided with their attaching email, as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i) – (ii), which states that documents are to be produced in the manner in which "they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i) – (ii). However, all of the following documents were produced without any of the noted attachments actually being

attached to the documents: NWF 001263, 001268, 001323, 001330, 001334, 001335, 001344, 001353, 001355, 001357, 001375, 001382, 001384, 001392, 001512, 001538, 001581, 001591, 001622, 001985, 002199, 002208, 002294, 002320, 002334, 002362, 002363, 002403, and 002409. Though Defendant has produced some documents which were omitted when the emails to which they were attached were produced, it refuses to produce the email attachments for the preceding list of documents, claiming that the documents are either confidential or are not relevant to this case, because the documents on the above list were produced because they hit on search terms agreed to by the parties but not because they were relevant to this matter. First, as to confidentiality, there is a protective order in place in this case (Docket No. 33) which would allow Defendant to stamp the documents confidential before producing them, which should alleviate this concern. Second, Plaintiff should be afforded the opportunity to determine whether any of the attachments to emails which are omitted from production are relevant or, more importantly, might lead to the discovery of evidence which is admissible, as is required by Rule 26. Defendant is improperly attempting to make that decision for Plaintiff, after choosing to produce the emails which refer to documents omitted from production. If the emails themselves are not responsive to discovery requests in this case, then they should not have been produced. But, since they were produced, Plaintiff should not be left without the attachments which may place these emails in the proper context and which may lead to the discovery of relevant evidence for this case.

E. **Missing Pages from Documents**[1]

Multiple documents appear to have been produced by Defendant with content missing. At NWF 000023-27, the document was produced without the even-numbered pages occurring

[1] The documents discussed in this section were addressed as recently as May 16, 2018, and Defendant advised that it is checking on whether the documents addressed here are missing pages. Plaintiff included this section in the Motion to Compel to avoid waiving the issue.

between pages 1 and 7 of the document. The document appearing at NWF 000189 is missing 3 of the 5 pages of the document. The document at NWF 001250 was produced with an email exchange that appears to have been cut off from the bottom of the document produced, and it should be re-produced with this email exchange included. Complete copies of all of these documents should be produced by Defendant.

**WHEREFORE**, for the foregoing reasons, Plaintiff James Klein respectfully requests that this Court grant his Motion to Compel and order Defendant to comply in full with all of the aforementioned discovery requests, and award any further relief which this Court deems just and appropriate.

**Dated:** May 17, 2018

Respectfully Submitted,

**JAMES KLEIN**

/s/ Ruth I. Major
One of His Attorneys

Ruth I. Major (ARDC No. 6205049)
Daniel R. Broadwell (ARDC No. 6299177)
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com

Mark D. DeBofsky (ARDC No. 3127892)
Martina B. Sherman (ARDC No. 6305531)
DeBofsky, Sherman & Casciari P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
Phone: (312) 561-4040
mdebofsky@debofsky.com
msherman@debofsky.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2018, I caused **Plaintiff's Motion to Compel** to be filed with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Michael F. Braun
Ariane M. Janz
Howard & Howard Attorneys PLLC
200 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: (312) 456-3686
mbraun@howardandhoward.com
ajanz@howardandhoward.com

/s/ Daniel R. Broadwell

Ruth I. Major (ARDC No. 6205049)
Daniel R. Broadwell (ARDC No. 6299177)
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com

Mark D. DeBofsky (ARDC No. 3127892)
Martina B. Sherman (ARDC No. 6305531)
DeBofsky, Sherman & Casciari P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
Phone: (312) 561-4040
mdebofsky@debofsky.com
msherman@debofsky.com